**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BOBBY LEE SUSDORF,

    Petitioner,                                        CASE NO. 2:10-11661
                                                             HONORABLE PAUL D. BORMAN
v.                                                            UNITED STATES DISTRICT JUDGE

GREG McQUIGGIN,

    Respondent.

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS**

    Bobby Lee Susdorf, ("petitioner"), currently on parole supervision with the Michigan Department of Corrections through the Kalamazoo Parole Office, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [1] In his *pro se* application, petitioner challenges his conviction for two counts of felon in possession of a firearm, M.CL.A. 750.224f; and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons stated below, the application for a writ of habeas corpus is DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

    Petitioner was convicted of the above offenses following a jury trial in the Midland County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. §

---

[1] The Court obtained this information from the Michigan Department of Corrections' Offender Tracking Information System (OTIS), which this Court is permitted to take judicial notice of. *See Ward v. Wolfenbarger,* 323 F. Supp. 2d 818, 821, n. 3 (E.D. Mich. 2004). In addition, petitioner has filed a change of address notice with the clerk of this court which lists a private address in Kalamazoo, Michigan.

2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On November 24, 2006, officer Terese Hartley, a conservation officer at Michigan's Department of Natural Resources (DNR), received an anonymous tip that defendant, who is a convicted felon, was hunting with a firearm. Hartley, joined by deputy Kevin Dush and DNR conservation officer Larn Strawn, went to defendant's residence at 5651 West Huckleberry Road, in Shepherd, Michigan. However, when the three officers arrived at defendant's home, they found that defendant was not home.
>
> Wanda Smith, defendant's then live-in girlfriend, however, was at the home and allegedly invited the officers inside the entrance of the home. Before answering the door, Smith had allegedly heard a knocking on her bedroom window, and was surprised to see one of the officers peeking into her bedroom. According to Smith, this officer ordered her to answer the door and although she did so, she contends that she never invited the officers into the home. Once the officers were inside, Smith informed the officers that defendant, joined by a group of his relatives, was hunting on state-owned land near Coleman Road. The officers did not conduct a search or seek to obtain evidence at this point, but only sought to locate defendant's whereabouts. Smith, however, alleged that the officers did search her bedroom at this time.
>
> Subsequently, the officers, joined by a fourth officer, deputy Jesse Milks, all went to the state-owned land and located defendant. When the officers approached defendant and his hunting party, officer Hartley noticed that defendant did not have a gun, but that another male, Dwight Crawford, in the party was carrying two rifles, including a 30.06 caliber rifle. Upon questioning, Crawford admitted to the officers that defendant had just handed him the 30.06 caliber rifle. Hartley then seized the weapon from Crawford. The officers arrested defendant. Defendant then told Hartley that he had guns stored at his residence, but that these guns belonged to Smith.
>
> After defendant's arrest, Hartley went to the courthouse to obtain a search warrant for defendant's residence. In the interim, deputy Milks and officer Strawn went to defendant's house to wait for Hartley to return with the warrant. The officers entered the house with Smith's permission. Once Hartley obtained the warrant and returned to defendant's home, Hartley and Strawn conducted the search of the home and seized a "muzzle loader" type rifle and a deer-hunting rifle, both of which were located in an unlocked gun cabinet in defendant's bedroom.
>
> Subsequently, defendant was charged and the matter went to trial. Before trial could

begin, defendant moved to suppress the evidence on the grounds that the officers had illegally searched his home. Defendant alleged that the warrant was invalid because it was based on information illegally obtained by the officer who peered through defendant's bedroom window. The trial court denied this motion, finding that Smith had given the officers consent to search the premises and that Smith's testimony was incredible in comparison to the officers' testimonies.

At trial, Smith's testimony revealed that she had seen defendant take a 30.06 caliber rifle from the gun-cabinet when he went hunting on November 24, 2006, and that she had seen him use it other times during the hunting season. Smith testified that she did not use any of the guns in the gun-cabinet and that they were not hers. At the close of testimony, the jury convicted defendant of two counts of felon in possession, specifically finding him guilty of possessing a firearm on state land in count one and possessing a firearm at 5651 Huckleberry Road in count two. This appeal followed.

*People v. Susdorf,* No. 282549, *1-2 (Mich.Ct.App. May 12, 2009).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 485 Mich. 975, 774 N.W.2d 908, (2009).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court erred in failing to suppress the guns seized from defendant-appellant's home as they were discovered as the result of an illegal search, where there was no warrant and permission to enter the home was not freely given.

II. Defendant was denied the constitutional right to be free from double jeopardy where he was convicted of two counts of being a felon in possession of a firearm where the statute violated does not provide for multiple convictions on the basis of the possession of different firearms at the same time.

III. The amended judgment of sentence imposes "state minimum costs" of $165.00, but the court (at resentencing) imposed costs of only $120.00, and only $120.00 in costs were allowed by statute (M.C.L. 769.1j). Petitioner is entitled to a modification of his sentence.

## II.   STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody

> pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. DISCUSSION

**A. Claim # 1. The Fourth Amendment claim.**

Petitioner first contends that the state trial court erred in denying his motion to suppress the two firearms that police officers seized from his home.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided,

in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (*quoting Gilmore v. Marks*, 799 F.2d 51, 57 (3rd Cir. 1986)). Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision [on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown,* 638 F. Supp. 2d at 812-13 (*quoting Siripongs v. Calderon*, 35 F. 3d 1308, 1321 (9th Cir. 1994)).

Petitioner is unable to raise a Fourth Amendment claim that the evidence in this case was the product of an illegal search or seizure when he raised the factual basis for this claim in the state trial and appellate courts and the state courts thoroughly analyzed the facts and applied the proper constitutional law in rejecting his claim. *Machacek*, 213 F. 3d at 952; *Monroe v. Smith,* 197 F. Supp. 2d 753, 766 (E.D. Mich. 2001). Because petitioner was afforded opportunities to present his case regarding the validity of the search, *Stone* bars his Fourth Amendment claim. *Brown,* 638 F. Supp. 2d at 813. Accordingly, petitioner is not entitled to

habeas relief on his first claim.

### B. Claim # 2. The Double Jeopardy claim.

Petitioner next contends that his two felon in possession convictions constitute multiple punishments in violation of the Double Jeopardy Clause of the United States Constitution.

The Michigan Court of Appeals rejected petitioner's claim:

> In the instant matter, defendant was convicted of two counts of MCL 750.224f, which prohibits a convicted felon from possessing, using, transporting, selling, purchasing, carrying, shipping, receiving, or distributing a firearm. We see no double jeopardy violation here. Defendant's contention that he was twice convicted for possessing multiple firearms "at the same time" is factually inaccurate. It is true that the Double Jeopardy Clause protects against multiple punishments for the same offense. However, defendant's felon in possession convictions arose from two different and distinct factual scenarios: once when defendant possessed a gun on the state-owned land, and again, when two rifle-type weapons were later found at defendant's residence. Under these facts, defendant's double jeopardy rights were not implicated because he did not receive multiple punishments for the same offense. Rather, he was convicted of two separate counts under the same statute for two separate violations of the same statute. Accordingly, we reject defendant's argument, as there was no plain error affecting his substantial rights.

*Susdorf,* Slip. Op. at * 3.

The Double Jeopardy Clause serves the function of preventing both successive punishments and successive prosecutions. *United States v. Ursery*, 518 U.S. 267, 273 (1996). The protection against multiple punishments prohibits the government from "punishing twice or attempting a second time to punish criminally for the same offense." *Witte v. United States*, 515 U.S. 389, 396 (1995) (quoting *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)). Although the Double Jeopardy Clause protects a defendant against cumulative punishments for convictions on the same offense, the clause does not prohibit the state from prosecuting a defendant for such multiple offenses in a single prosecution. *See Ohio v. Johnson,* 467 U.S. 493, 500 (1984). Moreover, whether punishments are multiple, so as to violate the Double Jeopardy Clause, is

essentially a question of legislative intent. *Id.* at 499.

In the present case, the Michigan Court of Appeals determined that there was no Double Jeopardy violation because petitioner's convictions for two separate counts of felon in possession of a firearm were based upon petitioner's possession of two separate firearms at different times and locations.  The Michigan Court of Appeals' legal determination is not unreasonable.  Indeed, under federal law, "where a defendant has possessed different weapons at different times or places, the government may treat them as separate units of prosecution and charge multiple counts." *U.S. v. Jones*, 601 F. 3d 1247, 1259 (11th Cir. 2010) (*citing United States v. Bonavia*, 927 F.2d 565, 568-69 (11th Cir. 1991)).  Numerous federal cases have concluded that there is no violation of the Double Jeopardy Clause to charge a defendant with multiple counts of violating 18 U.S.C. § 922(g), the federal counterpart of Michigan's felon in possession statute, if the evidence shows that the defendant "acquired possession of the firearms or ammunition on different occasions, or that he stored them at different sites." *U.S. v. Olmeda*, 461 F. 3d 271, 280 (2nd Cir. 2006) (holding that separate counts of felon in possession were appropriate where the defendant possessed multiple rounds of ammunition at two different locations).  Federal courts have thus rejected similar Double Jeopardy challenges as the one brought by petitioner, when each conviction for being a felon in possession of a firearm involved the possession of a separate weapon at a separate time and place. *See also Jones,* 601 F. 3d at 1259-60 (permissible to convict the defendant of two separate felon in possession charges where government was permitted to treat each possession as a separate unit of possession, since defendant separated the gun from the ammunition, and in any case two different kinds of ammunition were involved); *U.S. v. Grant,* 114 F. 3d 323, 329-30 (1st Cir.

7

1997) (indictment counts to which defendant pled guilty were not facially multiplicitous since the four counts of being a felon in possession of 11 different firearms were distinct from one another in time, place, or both, and weapon possessed); *U.S. v. Booker*, 553 F. Supp. 2d 9, 10 (D. Me. 2008) (proper to charge defendant with separate counts of felon in possession of a firearm involving the possession of separate firearms at different times); *U.S. v. Mackey*, 299 F. Supp. 2d 636, 641-42 (E.D. La. 2004) (charging and convicting defendant on three counts of being felon in possession of firearm, based on defendant's possession of three different firearms during three different events, did not violate double jeopardy).  Because petitioner's two convictions for felon in possession of a firearm involved separate weapons found at different locations and at different times, there was no violation of the Double Jeopardy Clause.

### C. Claim # 3.  The sentencing claim.

Petitioner lastly contends that the amended judgment of sentence, which imposed state minimum costs of $ 165.00, contained a clerical error that should be corrected to reflect that the actual amount of costs the trial court imposed was $ 120.00.  The Michigan Court of Appeals agreed with petitioner and remanded the matter to the trial court for correction of the error.  *Susdorf,* Slip. Op. at * 3.

Petitioner is unable to challenge the imposition of costs by the sentencing court in a petition for writ of habeas corpus.  Where a habeas petitioner is not claiming the right to be released but is challenging the imposition of a fine or other costs, he or she may not bring a petition for writ of habeas corpus. *See United States v. Watroba*, 56 F. 3d 28, 29 (6th Cir. 1995).  Moreover, the Michigan Court of Appeals' decision to order that the amended judgment of sentence be corrected to be in conformance with Michigan law moots petitioner's sentencing

claim. *See James v. Singletary,* 995 F. 2d 187, 188 (11th Cir. 1993).

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.     CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

                                                S/Paul D. Borman
                                                PAUL D. BORMAN
                                                UNITED STATES DISTRICT JUDGE

Dated: February 7, 2011

                                  CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 7, 2011.

                                                S/Denise Goodine
                                                Case Manager